IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RYLA BOUCHIER, individually and as class representative | § § § | CIVIL ACTION NO. _____ |
| v. | § § | |
| COMCAST CORPORATION; TOP RANK, INC.; EMMANUEL PACQUIAO; MAYWEATHER PROMOTIONS, LLC; and FLOYD MAYWEATHER, JR. | § § § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff Ryla Bouchier ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through her undersigned attorneys, and, for cause of action against Defendants Comcast Corporation, Top Rank, Inc., Emmanuel Pacquiao, Mayweather Promotions, LLC, and Floyd Mayweather, Jr., would respectfully show as follows:

**I. NATURE OF THE ACTION**

1.1     On May 2, 2015, millions of Americans were cheated out of hundreds of millions of dollars when Emmanuel Pacquiao, knowingly injured, entered the boxing ring to fight Floyd Mayweather, Jr.  Despite admitting that he was injured prior to even entering the ring, Pacquiao represented to the Nevada Athletic Commission, in writing, that he was not injured hours before the fight. In other words, Pacquiao admitted to fraud.  He participated injured in a fight that generated hundreds of millions of dollars because postponing the fight would have caused the other defendants named in this lawsuit, including Pacquiao, to lose out on the biggest payday of their careers and biggest pay day in pay per view history.

1.2     Plaintiff brings this case individually and on behalf of putative Class members who were deceived by the conspiracy and fraud perpetuated by Floyd Mayweather, Jr., Emanuel Pacquiao, Top Rank, Inc., Mayweather Promotions, LLC, and Comcast Corporation, in an effort to capitalize on public anticipation of the fight in lieu of an honest boxing contest. Had Plaintiff and the putative Class members realized they were not going to watch both fighters compete in a healthy condition, they would not have purchased the fight on pay per view or purchased tickets to the fight, or, at minimum, would have had the choice to see an honest fight or a show. In this instance, the Plaintiff and putative Class members had no choice given the intentionally fraudulent actions of the Defendants.

## II.  PARTIES

2.1     Plaintiff Ryla Bouchier, is a citizen and resident of Houston, Harris County, Texas. Plaintiff purchased tickets and/or the pay per view event to the Mayweather-Pacquiao fight held May 2, 2015 ("the Fight") at her residence in Galveston, Texas.

2.2     Defendant Comcast Corporation ("Comcast") is a Pennsylvania corporation, which does business in the State of Texas for the purpose of accumulating monetary profit, and may be served with process by serving its registered agent for service of process CT Corporation System, in Philadelphia County, Two Commerce Square, 2001 Market Street, 5th Floor, Philadelphia, PA 19103.

2.2.1   Comcast was at all relevant times involved in interstate commerce, and it directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce by use of interstate mail or wires.

2

      2.2.2    Comcast created, sold, and distributed pay per view showings of the Fight and participated in the enterprise, as more fully explained below, with knowledge that the product it was selling and promoting was not what it was represented due to Pacquiao's injury.

      2.3    Defendant Top Rank, Inc. ("Top Rank"), is a Nevada corporation, which does business in the State of Texas for the purpose of accumulating monetary profit, and may be served with process by serving its registered agent for service of process The Prentice-Hall Corporation System, Nevada, Inc., Clark County, 2215-B Renaissance Drive, Las Vegas, Nevada, 89119.

      2.3.1    Top Rank was at all relevant times involved in interstate commerce, and it directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce by use of interstate mail or wires.

      2.3.2    Top Rank promoted, distributed, and profited from ticket and pay per view sales of the Fight and participated in the enterprise, as more fully explained below, with knowledge that the Fight was not what it was represented as due to Pacquiao's injury.

      2.4    Defendant Emmanuel Pacquiao ("Pacquiao") is a resident of the Philippines, and may be served with process at his residence in the Philippines, or wherever he may be found.

      2.4.1    Pacquiao was at all relevant times involved in interstate commerce, and he directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce by use of interstate mail or wires.

      2.4.2    Pacquiao promoted and fought in the Fight, and profited from ticket and pay per view sales of the Fight and participated in the enterprise, as more fully explained below, with knowledge that the Fight was not what it was represented as, due to Pacquiao's known

injury which was hidden from consumers including Plaintiff and putative Class members until after the Fight.

2.5     Defendant Mayweather Promotions, LLC ("Mayweather Promotions"), is a Nevada limited liability company, which does business in the State of Texas for the purpose of accumulating monetary profit, and may be served with process by serving its registered agent for service of process Jeffrey Morse & Associates, Ltd., in Clark County, 3753 Howard Hughes Parkway, #200-416, Las Vegas, Nevada, 89169.

2.5.1     Mayweather Promotions was at all relevant times involved in interstate commerce, and it directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce by use of interstate mail or wires.

2.5.2     Mayweather Promotions promoted, distributed, and profited from ticket and pay per view sales of the Fight and participated in the enterprise, as more fully explained below, with knowledge that the Fight was not what it was represented as due to Pacquiao's injury.

2.6     Defendant Floyd Mayweather, Jr. ("Mayweather"), an individual, fought in the Fight. Mayweather may be served with process at his residence in Clark County, 9705 Highridge Drive, Las Vegas, Nevada, 89134, or wherever he may be found.

2.6.1     Mayweather was at all relevant times involved in interstate commerce, and he directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce by use of interstate mail or wires.

2.6.2     Mayweather promoted and fought in the Fight, and profited from ticket and pay per view sales of the Fight and participated in the enterprise, as more fully explained

below, with knowledge that the Fight was not what it was represented as due to Pacquiao's injury.

### III.   JURISDICTION AND VENUE

3.1     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(d), the Class Action Fairness Act of 2005, because the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendants, and the matter in controversy exceeds the sum or value of $500,000,000.00, exclusive of interest and costs.

3.2     This Court also has subject matter jurisdiction over this lawsuit as it arises under the laws of the United States, *i.e.*, 18 U.S.C. §1961, et seq., The Organized Crime Control Act of 1970, Pub. L. No. 91-452, §910(a), 84 Stat. 941, Racketeer Influenced and Corrupt Organizations ("RICO").

3.3     This Court has jurisdiction over the claims for relief under RICO pursuant to 18 U.S.C. §§1964(a) and 1965(c).

3.4     This Court has personal jurisdiction over Defendants because Defendants do business in the State of Texas.

3.5     Venue is proper in this Court pursuant to 28 U.S.C. §1391(c)(2) because Defendants are subject to personal jurisdiction here.

### IV.   FACTS

4.1     Billed as "The Fight of the Century," the "Battle for Greatness," and the "Legacy," the long-anticipated Mayweather-Pacquiao Fight proved to be much less than what it was promoted as. The professional boxing match between the eight-division world champion,

Pacquiao, and the undefeated, five-division world champion, Mayweather, took place May 2, 2015, at the MGM Grand Garden Arena in Las Vegas, Nevada.

4.2   Tickets for the Fight went on sale April 23, 2015, and were sold out within one minute of being made available. Before the Fight, each fighter was expected to make over $100 million for the Fight.

4.3   The Fight was promoted by both Mayweather Promotions and Top Rank, with Mayweather Promotions billed as the lead promoter, and the Fight was sold and distributed by cable providers, like Comcast.

4.4   Although the Fight lived up to the revenue expectations of those who stood to monetarily benefit from it, generating somewhere between $300 million and $400 million in gross revenue, the Fight did not live up to boxing fans' and consumers' expectations. The Fight was not great, not entertaining, not electrifying. It was boring, slow, and lackluster; it was hardly the "Fight of the Century," or the "Battle of Greatness," rather it was a show choreographed by the participants.

4.5   Hours after the Fight, Top Rank and Pacquiao disclosed, for the first time publicly despite knowing such information in advance, that Pacquiao had injured his right shoulder before the Fight during a training exercise in April 2015. Although Top Rank claimed the injury was partly healed before the Fight, Pacquiao's shoulder was injured enough to cause Pacquiao to request an injection of legal painkillers the day before the Fight, a request which was denied.

4.6   Pacquiao and Top Rank also revealed Pacquiao re-injured the already damaged shoulder in the fourth round of the Fight, which rendered him "ineffective" after that.

4.7     In Pacquiao's pre-fight questionnaire, administered by the Nevada Athletic Commission, Pacquiao lied and swore he had no shoulder injuries.

4.8     Mayweather and Mayweather Promotions also knew about Pacquiao's pre-Fight injury, yet continued with the Fight as planned.

4.8     Instead of postponing the Fight, as would be reasonable and fair to boxing fans like Plaintiff and others like her, Mayweather Promotions and Top Rank, along with Mayweather and Pacquiao, and the cable networks carrying the fight, like Comcast, allowed the Fight to move forward for their own monetary profit, thereby engaging in a scheme to alienate and defraud fans who paid to see the Fight, on television and in person.

## V.  CLASS ACTION ALLEGATIONS

5.1     Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all others similarly situated.  Plaintiff will seek certification of the following class ("the Class"):

> All American citizens that purchased the right to view the fight on Comcast and all American citizens that paid for tickets to the fight, who would not have paid for pay per view or tickets had they known that Pacquiao was seriously injured.

5.2     *Numerosity*.  Although the number of the putative class members is not presently known, the class is likely to be compromised of 1,000,000 members.  The Class is certainly so numerous that joinder of all members of the Class is impracticable.

5.3     *Commonality*.   Common questions of fact and law exist because, *inter alia*, Plaintiff and all Class members were injured by Defendants' RICO violations and fraud.

5.4     *Adequacy of Representation*.  Plaintiff will fairly and adequately protect the interests of the members of the putative Class.  Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the Class.  Plaintiff and her counsel have the necessary financial resources necessary to adequately and vigorously litigate this class action. Plaintiff has no adverse or antagonistic interests to those of the Class.  Plaintiff is willing and prepared to serve the Court and the Class members in a representative capacity, with all of the obligations and duties material thereto, and is determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the class members.

5.5     *Superiority*.  A class action is superior to other available methods for fair and efficient adjudication of these claims, and will create a substantial benefit to both the public and the courts in that:

   5.5.1   Costs of prosecuting the action individually will vastly exceed the costs for prosecuting the case as a class action;

   5.5.2   Class certification will obviate the necessity of a multiplicity of claims;

   5.5.3   It is desirable to concentrate the litigation of these claims in a single forum;

   5.5.4   Unification of common questions of fact and law into a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions;

   5.5.5   A class action is a superior means of fairly and efficiently resolving this dispute.  Given the complexity of the issues presented, individual claims are not sufficiently sizeable to attract the interest of highly able and dedicated attorneys who will prosecute them on a contingency basis.  A class action is therefore essential to prevent a failure of justice.

5.6     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## VI.  CAUSE OF ACTION: RICO

6.1     Plaintiff re-alleges the foregoing paragraphs as though again set forth herein.

**A.     RICO Persons**

6.2     Comcast, Top Rank, and Mayweather Promotions are all entities capable of holding a legal or beneficial interest in property.

6.3     Mayweather and Pacquiao individuals capable of holding a legal or beneficial interest in property.

6.4     Comcast, Top Rank, Mayweather Promotions, Pacquiao and Mayweather are collectively referred to as the "RICO Persons," or each a "RICO Person."

6.5     The RICO Persons have each violated 18 U.S.C. section 1962, and by reason of the violations, Plaintiff has been injured in its property.

6.6     Comcast, Top Rank, Mayweather Promotions, Pacquiao, and Mayweather, as persons within the meaning of 18 U.S.C. section 1961(3), and as persons associated with the enterprise, have conducted, or participated in the conduct of the enterprise, through a pattern of racketeering activity, as plead herein, which enterprise at all relevant times engaged in, and affected, both interstate and foreign commerce, all in violation of 18 U.S.C. section 1962(c).

6.7     Comcast, Top Rank, Mayweather Promotions, Pacquiao and Mayweather, have conspired to violate 18 U.S.C. section 1962(c), a violation of 18 U.S.C. 1962(d).

**B.     The Enterprise and Association with the Enterprise**

6.8     MGM Grand Hotel, LLC ("MGM"), is the enterprise, and was engaged in interstate and foreign commerce through massive promotional and marketing schemes. MGM's legitimate purpose was to host the Fight and provide a forum for the Mayweather and Pacquiao boxing contest, promoted as a contest between two healthy boxers on May 2, 2015, in the "Fight of the Century" and to profit, in part, from the sale of pay per view access via various cable and satellite providers, including Comcast.

6.9     MGM did in fact host the Fight and did in fact generate massive profits from ticket sales and pay per view sales. However, the Fight was overshadowed by Pacquiao's admissions that he fought injured and that this was an injury he knew about for sufficient time prior to the Fight, which he disclosed to other RICO persons prior to the Fight and prior to Plaintiff's purchase of the Fight through Comcast, yet failed to disclose ultimately to Plaintiff and putative class members prior to the Fight.

6.10    On information and belief, Pacquiao and Mayweather are at the top of the command structure, and had a regularized manner of dealing with Plaintiff and putative Class members on behalf of MGM, either themselves, or through the other RICO Persons.

6.11    MGM, as alleged above, is entirely separate and distinct from the RICO Persons.

**C.     Participation in the Enterprise through a Pattern of Racketeering Activity**

6.12    Each RICO Person, as more fully plead herein, conducted, or participated in the conduct of the enterprise, through a pattern of racketeering activity, which legally and proximately caused damage to Plaintiff and putative class members by injuring them in their property.

6.13    The racketeering activity consisted of mail fraud, pursuant to 18 U.S.C. section 1341, and wire fraud, pursuant to 18 U.S.C. section 1343.

6.14    Each RICO Person participated in a plan, scheme or artifice to defraud Plaintiff and the Class, and, with intent to so defraud, used or caused to be use of the mail or the wires to implement that scheme.

6.15    As alleged more fully above, RICO Persons effectuated the plan, scheme or artifice to defraud by making misrepresentations of material fact, with reasonable foreseeability that the mail or wires would be used, and there was actual use of the mail or wires to further this scheme, all for the purpose of influencing Plaintiff and the putative Class to act.

6.16    In making each of the misrepresentations sent by the mail or wires, or causing such misrepresentations to be sent by the mail or wires, each of the RICO Persons knew or believed the misrepresentations to be untrue, as they in fact were, and Plaintiff and the putative Class believed and relied on the misrepresentation.

6.17    The racketeering activity alleged herein occurred between January 2015 and May 2015, as alleged more fully above, when the RICO Persons began conducting the affairs of the enterprise and when Pacquiao was injured.

6.18    This pattern of racketeering activity alleged is both related and continuous.

6.19    The pattern is related in that the intentional misrepresentations of facts to Plaintiff and the putative Class by mail or wire has the same purpose: to induce Plaintiff and the putative Class to purchase the Fight on pay per view and purchase tickets to the Fight, thus causing Plaintiff and the putative Class injury in their property. Said purchases have not been not repaid.

6.20     The pattern was continuous in that the communications by mail or wire were a series of related acts, extending over a substantial period of time and directed toward willfully misrepresenting to Plaintiff and the putative Class material facts which deceived Plaintiff and the putative Class into purchasing pay per view and tickets.

### D.     Damages

6.21     The pattern of racketeering activity alleged herein was both the factual and legal (proximate) cause of Plaintiff and the putative Class's injuries and damages.

6.22     But for the ongoing misrepresentations made to Plaintiff and the putative Class by the RICO Persons through the alleged pattern of racketeering activity, Plaintiff and the putative Class would not have been deceived into purchasing pay per view or tickets to the fight. As legal (proximate) cause of purchasing pay per view and tickets to the event, Plaintiff and the putative Class were injured in their property, in that funds were lost on the purchase of pay per view.

## VII.  JURY DEMAND

7.1     Plaintiff demands a trial by jury herein.

WHEREFORE, Plaintiff and the putative Class, pray for relief as follows:

a.   Actual damages for the injury caused to Plaintiff and the putative Class by the pattern of racketeering activity, including funds lost through purchase of tickets to the fight and purchase of the right to view the fight on pay per view;

b.   Treble damages pursuant to statute;

c.   Attorney's fees pursuant to statute;

d.   Costs of suit.

Plaintiff further prays for all such other and further relief to which she may show herself justly entitled, in law or in equity.

Respectfully submitted,

*/s/ Marcus R. Spagnoletti*
Marcus R. Spagnoletti
Texas SBN 24076708 / SDTX ID 1139660
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone:	713 653 5600
Facsimile:	713 653 5656
Email:	mspagnoletti@spaglaw.com

**OF COUNSEL:**

**SPAGNOLETTI & CO.**
Francis I. Spagnoletti
Texas SBN 18869600 / SDTX ID 5369
Jerry C. von Sternberg
Texas SBN 20618150 / SDTX ID 11583
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone:	713 653 5600
Facsimile:	713 653 5656
Email:	fspagnoletti@spaglaw.com
Email:	jvonsternberg@spaglaw.com